**HARTMANN DOHERTY**
**ROSA BERMAN & BULBULIA, LLC**
65 Route 4 East
River Edge, New Jersey 07661
(201) 441-9056

**BESHADA FARNESE LLP**
108 Wanaque Avenue
Pompton Lakes, New Jersey 07442
(973) 831-9910

*Attorneys for Plaintiff*
*IdeaVillage Products Corp.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| IDEAVILLAGE PRODUCTS CORP., a New Jersey corporation,<br><br>      Plaintiff,<br><br>      vs.<br><br>BRETT SAEVITZON; ALL THE J'S LLC; SPOT ON DIRECT RESPONSE, LLC; D R PRODUCT GROUP, LLC; PAUL VON MOHR; INTERACTIVE GROUP LLC; PREXIO TOYS LTD. and INFOMERCIALS, INC.;<br><br>      Defendants. | Civil Action No.: 11-7548(WJM)(MF)<br><br>**DECLARATION OF COUNSEL FOR PLAINTIFF IN SUPPORT OF MOTION TO REMAND**<br><br>*(Document Electronically Filed)* |

    I, Donald A. Beshada, Esq., hereby declare, under penalty of perjury:

    1.   I am a partner in the firm of Beshada Farnese LLP, outside general counsel to IdeaVillage Products Corp. ("IDV"), the Plaintiff in the captioned matter.  In such capacity, I have

personal knowledge of the facts and circumstances set forth herein.

2.   I submit this Declaration in support of IDV's application, pursuant to Local Civil Rule 65.1, for an Order requiring Defendants Paul von Mohr, Brett Saevitzon and Spot On Direct Response, LLC ("Spot On") to appear forthwith and show good cause as to why this matter should not be immediately remanded to the Superior Court of New Jersey, Passaic County, Chancery Division, in light of (a) the jurisdictional and other defects that are apparent from the face of Defendant von Mohr's removal petition, in which Defendants Saevitzon and Spot On have joined, and (b) the pending January 6, 2012 Preliminary Injunction hearing in the Superior Court of New Jersey.

3.   As set forth herein, and as further addressed in IDV's accompanying brief in support of this application and remand, as well as the pleadings filed in the state court action, there are good and sufficient reasons, as required under Local Civil Rule 65.1, why the remand motion should be heard and granted on an expedited basis.

**BACKGROUND**

4.   This case arises from an exclusive "Consulting Agreement" between IDV and Defendant Saevitzon, under which Saevitzon agreed to serve as a product finder for IDV on an

exclusive basis, in exchange for various forms of compensation paid to him by IDV.

5.   As set forth in detail in the Verified Complaint filed in the New Jersey Superior Court, Saevitzon materially breached his exclusive Agreement with IDV, and he and other the Defendants have violated IDV's contractual and common law rights by developing, advertising, selling and distributing a children's slipper/plush toy product known as Stompeez (hereinafter the "Product"), without the consent of IDV.   By their own admission, Saevitzon, in conjunction with the other Defendants, began developing the Product (without IDV's knowledge) in the Fall of 2010, while IDV was paying Saevitzon over $20,000 per month to act as its "exclusive" product finder.

6.   Unfortunately, the Defendants are presently, and on an ongoing basis, causing irreparable harm to the brand and, as a result, to IDV (the rightful contractual holder of the licensing rights to the Product). This harm is occurring, literally, on a daily basis, by virtue of a series of consumer-alleged deceptive practices, including the Defendants' failure to fulfill orders for the Product (after consumers have paid Defendants for the Product and purported "shipping and handling") and, according to consumers, the delivery of defective, non-conforming goods. Annexed hereto as Exhibit "A" are a series of "real time" consumer complaints from an industry website.   Thus, as set

3

forth in IDV's Verified Complaint, Defendants are ruining the brand and placing its retail distribution in serious jeopardy. Money damages are simply not sufficient to compensate IDV for its potential loss of this program.

7.    IDV's Order to Show Cause was filed on December 7, 2011.  The Superior Court (Hon. Margaret Mary McVeigh, P.J.Ch.) executed the Order to Show Cause and set the matter down for December 16, 2011, with an expedited briefing schedule.  The matter was subsequently adjourned – at the request of Saevitzon and Spot On – by the Superior Court to January 6, 2012,[1] with their responding papers to IDV's Order to Show Cause due on December 29, 2011.

8.    Defendant von Mohr – Saevitzon's business partner in Spot On – removed this matter on December 28, 2011, one day before Defendants' opposition papers to IDV's Order to Show Cause were required to be filed in the Superior Court.

9.    Critically, von Mohr did not obtain the consent of all defendants before removing the matter.  Indeed, other than himself, his business partner and their entity, no other defendant joined in the removal petition, rendering it defective on its face.  Additionally, and as set forth in detail in IDV's

---

[1]    Defendants Saevitzon and Spot On sought an adjournment to January 20, 2012, based on their claim that Saevitzon would be traveling during the week of December 12, 2011 and due to his alleged inability to be contacted during that week.  See Exhibit "B."  IDV has since learned that the representation about Saevitzon being "out of contact" was not true.

4

accompanying Brief in support of its remand motion, the removal petition also misrepresents several critical facts, in an effort to create the "smokescreen" of federal jurisdiction where none exists. Specifically, and in contrast to the removal petition's representations, (i) there are no federal claims set forth in the Verified Complaint, and (ii) one of the defendants, Interactive Group, is a New Jersey limited liability company that is actually marketing the Product in the United States. See Exhibit "C," which is the home page of Interactive Group website, proudly displaying and advertising the Product as one of the Interactive Group brands.

10. In contrast to von Mohr's statements in the Removal Petition, IDV's state court Verified Complaint contains no federal claims and seeks only to enforce contractual rights between IDV and Saevitzon and AJ (one of several LLCs that are, as a matter of law and fact, the *alter ego* of Saevitzon) and to enjoin the other named Defendants from further tortious interference with IDV's contractual rights and from engaging in acts of tortious interference and unfair competition in violation of New Jersey common law. IDV's Order to Show Cause seeks an injunction and other equitable relief against

Defendants, including the New Jersey limited liability company Interactive Group, under New Jersey law.[2]

### DEFENDANTS' IMPROPER REMOVAL PETITION AND NECESSITY FOR IMMEDIATE REMAND

11.  It is IDV's belief that Defendant von Mohr, acting in concert with his business partner, Defendant Saevitzon, filed the defective removal petition solely for the purpose of further delaying the Order to Show Cause proceedings (to which Defendants have no legitimate defense).

12.  The defective Removal Petition contains two (2) purported bases for federal jurisdiction: (i) the case supposedly involves a federal question under the Lanham Act, and (ii) the Verified Complaint involves parties that are completely diverse.  Defendant von Mohr's claims are patently frivolous and the removal petition is, therefore, defective.  More specifically:

        a.  **Contrary to Defendants' assertions, the Verified Complaint does not plead a cause of action under the Lanham Act, 15 U.S.C. § 1051 et seq.**

---

[2]  In another obvious act of concerted gamesmanship, upon removal of the action by Defendant von Mohr, Defendants Saevitzon and Spot On moved to dismiss the Verified Complaint based on federal pleading standards.  Defendants argue, *inter alia*, that Plaintiff's unfair competition claim **under New Jersey common law** does not meet the requirements of a claim under the Lanham Act.  In fact, Defendants argue that IDV does not have a cognizable claim under the Lanham Act, thereby contradicting Defendants' claim of federal subject matter jurisdiction under 28 U.S.C. § 1331.

**b.   There is not complete diversity in this matter.** As set forth in the operative Complaint, plaintiff IDV is a New Jersey company, and Defendant Interactive Group — which was personally served with process on December 16, 2011 (in contrast to von Mohr's false statement that they were not served) and which advertises Stompeez as one of its brands — is a New Jersey Limited Liability Company. See Exhibits "D" and "E" hereto.

**c. The Removal petition is technically deficient, as not all Defendants have joined in the petition, as is required.**

13.   As noted, Saevitzon, von Mohr and Spot On have done anything and everything to delay the injunction hearing in the Superior Court of New Jersey. As the days pass, IDV is being irreparably harmed by, among other things, the false and deceptive business practices of Defendants which are, in reality, ruining what could be a valuable brand. Money damages are not calculable under these circumstances, and the only legitimate relief that will rectify Saevitzon's and von Mohr's conduct is an injunction. Given what appears to be their daily violation of consumer protection laws and, in essence, the proof that they have absolutely no business running this type of program, each day matters. That, combined with the patently defective and frivolous nature of von Mohr's Removal Petition, requires that this matter be addressed on an expedited basis by this Court.

14.   For the reasons set forth above, as well as for the reasons set forth in the accompanying Brief in support of Remand,[3] IDV respectfully requests that this Court order Defendants to appear and show cause as to why this matter should <u>not</u> be remanded forthwith to the New Jersey Superior Court, with an award of attorney's fees and costs.[4]

/s/Donald A. Beshada
DONALD A. BESHADA

Dated: January 3, 2011

---

[3]   Attached hereto as Exhibit "G" is a true and correct copy of the decision of the United States District Court for the Eastern District of Pennsylvania in <u>Staff Builders of Philadelphia, Inc. v. Koschitzki</u>, 1989 WL 974707 (E.D.Pa. August 18, 1989).

[4]   Notably, each of the reasons for remand identified above (along with supporting authority) have been raised with counsel for Defendant von Mohr, but Defendant's counsel has refused to withdraw the petition and consent to remand. *See* Exhibit F.

# EXHIBIT A

Case 2:11-cv-07648-WJM-MF  Document 8-3  Filed 01/03/12  Page 10 of 33 PageID: 413

Well, thank you everyone for the reviews. My 4 yr old had been begging for unicorn stompeez for Christmas since probably the beginning of November. I put it off & put it off & then they were out of stock. I had to make up an excuse that Santa wasn't making anymore & thought I'd order after they came back in stock & I almost put an order in the other day & decided to once again wait. Guess my subconscious mind was telling me something & now decided to look at reviews & so glad I did. By now shes already forgotten about them thank God & I'm happy about that so she wouldn't be disappointed if we got them & they didn't work & saves me some anger & $

Reply

2. *sherry* says:
   January 2, 2012 at 6:50 pm

   I got my slippers finally.. what A WASTE OF TIME AND MONEY, these are NOT WORTH IT these are poor quality and after ONE day of wearing one slipper does not work…..
   THANKS STOMPEEZ FOR YOUR CRAPPY ITEM.

   Reply

3. *Sandy* says:
   January 1, 2012 at 9:01 pm

   Ordered 11/28. 1 pair and no bag. It's 1/1 where are they??

   Reply

4. *Sandy* says:
   January 1, 2012 at 8:59 pm

   What a crock!! I ordered on 11/28 with promise of Christmas delivery. Guess what, no slippers and one very disappointed 4 year old. She is asking everyday where the elves are with her unicorn Stompeez. What do I tell her, they went on strike? Seriously after reading ALL these complaints I'm just going to attempt to cancel my order. I did go to the BBB and file a complaint. I hope they get shut down. Poor excuse for a company

   Reply

5. *Alison* says:
   January 1, 2012 at 4:20 pm

   I registered a complaint with Nickleodeon for continuing to show the stompeez ad on their channel but I never heard anything back from them. Did anyone else email a complaint to Nickleodeon?

   Reply

6. *laurie* says:
   January 1, 2012 at 1:20 pm

   Complaining to the local news and Nickelodeon will probably yield better results. All the BBB can do is give a positive or negative review of a business. Which really isn't very helpful if you don't check their website for the companies review before doing business with them. Which sadly none of us did in this case.

   Reply

7. *jessica* says:
   December 31, 2011 at 7:01 pm

   My mother ordered the dragon slippers for my daughter mid November. Christmas week still no Stompeez. She called every day and every day there was a new excuse! The best excuse had to have been "there delayed b/c of bad weather in China" Seriously!! Needless to say my 5 year old did not get her Stompeez but we stopped payment on card! What a scam! Shame on you for teasing these children!

   Reply

8. *Lynnvt* says:
   December 31, 2011 at 3:34 pm

   NOT A HAPPY TALE.

   I ordered Stompeez for 2 young friends for Christmas gifts. My order was Nov 1st. Then I got an email to say they would be back ordered for 6 weeks. Figured I still get them in time. I was leaving the US for the UK Dec 16 and taking these as presents. Got another email to say they were being shipped on the Monday 12th so I called to see when they would arrive. They couldn't tell me, I asked if I could upgrade the shipping to get them on Thursday, the person said she couldn't do that, so I asked for a supervisor. The supervisor was busy I said I'd hold but they wanted me to call back. I'd already been on hold for 30 minutes. I asked if they could call me back but no. So I cancelled the order.

   The end? No, they sent me the slippers anyway, arrived Dec 22nd after I was gone, but better than that, they shipped the FREE bag separately and charged me another $14 shipping for that.

   No if I want to return I need to pay the shipping. THESE GUYS ARE CROOKS.

   Reply

9. *susan p spaulding* says:
   December 31, 2011 at 3:03 pm

   Hello again folks; Wanted to jump back and tell you all that after reading a fair amount of reviews that people took the time to write; I have decided to cancel my entire order with Stompeez.com; $162.40 I also decided that come Tuesday I with file a complaint with the Better Business Bureau and The Attorney General's Office against this company. Please folks, do the same, Let's give Stompeez the best New year present that we can guarantee them; PUT THEM OUT OF BUSINESS!! It only takes a short amount of time to do this, but there is strength in numbers. This company is probably based out of the country; somewhere on foreign soil that hates Americans', but laughing at us all the way to the bank. Bilking millions of good and honest AMERICANS' out of our hard earned money. Come on Folks........Call and complain to the BBB and the AGO

   Reply

10. *susan p spaulding* says:
    December 31, 2011 at 2:47 pm

    Just wanted to give all future buyers who might be thinking they want to do business with Stompeez.com; One word: DON'T......I placed my order with Stompeez on Dec 5th, 2011-

The last day promised that if you ordered by the 5th you would receive your order by Christmas. I even called them to verify that I would receive my order by Christmas before placing the order. After about 10 days of no product I called Stompeez and they said not to worry. The week before Christmas I called and the customer service rep said that my order was being mailed out the following day. Three days later I was told that it would be mailed out the next day and not to worry that my order would be mailed out and delivered by Christmas Day, even if they had to express it; that was Stompeez promise and gift to it's customers. I replied; only if you get it it's a promise. Well, Christmas even no Stompeez and the store was closed. Christmas Day no Stompeez and the store was closed until the 27th. So I called on the 27th and I was given the same run around; but this time April tells me that maybe in a few days I might get my order???? Her exact stupid words. The best their guarantee amounts to is that they will give you a discount on the shipping and handling charges on 2 pair of their slippers; I purchased 6 pair for my 6 grandchildren. So, the bottom line is this folks; I WAS STOMPED ON BY STOMPEEZ. MY slippers amounted to $120.70 and they charge you $6.95 shipping per item; even though they'll be mailed out in the same box; which amounted to $41.70. There are so many adorable slippers out their; This company is a fly by night company; you can't wash these slippers if they get soiled; Save your time, money and heartache and don't do business with this scam of a company. Respectfully yours; S

Reply

11. *Gina* says:
December 30, 2011 at 6:44 pm

Well, I got our Stompeez by the hair of my nose!!! One day before Christmas!! Don't be too bummed that u didn't receive your Stompeez, one is already BROKE!!! It lasted a week... and beware, they try to call you and give you a FREE gas card or Wal-Mart card ...ya, but there is a catch!! Definitely not all it's cracked up to be.....super disappointed.

Reply

   ○  *mll* says:
December 31, 2011 at 10:44 am

Heads up!

Throughout these reviews you will come across Aimee & stranger.... They obviously work for Stompeez, because they are just as full of crap as the reps you speak to!

Good luck

Reply

12. *MLPore* says:
December 30, 2011 at 5:34 pm

Ordered 11 pair of Stompeez slippers on Oct. 11 and 13th and wanted them for Dec. 18th. Was promised over and over again they would get here, but never did. Finally I received 5 pair on the 23rd of December and then the duffle bags onDec.27th, but have never received any of the other 6 pair. The company is very unreliable and would never order anything else from them again.

Reply

13. *Dustin* says:
   <u>December 30, 2011 at 4:20 pm</u>

   Stompeez should be called scameez…I received my order the day before Christmas after making a complaint phone call…but to my dismay they sent the wrong product. I order the cat and got the unicorn…i decided to keep it not to disappoint my 3 year old daughter …which was a bad choice since they do not work…i did not receive the free duffle bag or the pillowcase and blanket I also ordered …i canceled the remainder of my order today and told them they have a substandard product and terrible service…i did not get any apology and was told if I don't like them ship them back.

   PLEASE DO YOURSELVES A FAVOR AND DONT BUY STOMPEEZ SAVE YOU FRUSTRATION AND YOUR KIDS DISAPPOINTMENT.

   <u>Reply</u>

14. *Kenni* says:
   <u>December 30, 2011 at 3:21 pm</u>

   I ordered Stompeez on December 1 for my two young daughters as a present from Santa. It's now December 30 and still no Stompeez – even though I was guaranteed delivery by Christmas day. When I called in mid-December to check the status of my order, I was told that they had just received a shipment of slippers and that they would be sent out the next day and guaranteed to arrive by Christmas day. When I called again today, December 30, I got the same story – they just got a shipment in and my order would soon be fulfilled. I have decided to cancel my order. I understand that they had an overwhelming response to their product, but they are being misleading. And that, I do not appreciate. I would steer clear of this product for now.

   <u>Reply</u>

15. *kelly* says:
   <u>December 30, 2011 at 10:01 am</u>

   I ordered Stompeez in November and didn't receive them until December 23rd. I definitely do not recommend buying these slippers!!! My girls have only had them since Christmas day and they are already broken! The eye on the monster will no longer pop up and the ears on the pink puppy are stuck up and will no longer go up and down. They were worn alot but were not abused! Not only that, I ordered the duffle bags and did NOT receive them! Waste of money for sure!!

   <u>Reply</u>

16. *Sharon Gurley* says:
   <u>December 30, 2011 at 12:24 am</u>

   WELL, MERRY CHRISTMAS TO YOU TOO STOMPEEZ!!! My granddaughter cried all day Christmas because she did not get the Stompeez she ask Santa for. She said this meant she was not a good girl. NOOOO, it means Stompeez did not send the shoes her grandmother ordered, by Christmas, as promised! Stop advertising, because you are out of the product and do not send on time when you have them in stock. Shame, Shame Stompeez!

   <u>Reply</u>
   ◦ *Jessica* says:

December 30, 2011 at 11:25 am

I've called this company EVERY day since 12/6 and yet to receive my order also. I placed it on 12/4. And today again I called them with the same old run around. And if anyone noticed they've changed their number twice. They're telling me my dragon slippers are back ordered but on their website there in stock. Talk about FALSE advertisement. I know have a very upset 3yr old that just cries for her slippers…. I went to the BBB to file a complaint.

Reply

17. *Angela* says:
December 30, 2011 at 12:07 am

I guess I'll join the chorus of disappointed customers. My daughter saw the nonstop commercials for these slippers on Nickelodeon and begged for them. I went against my better judgment ($20 for slippers!!) and ordered a pair Thanksgiving weekend. I had read the reviews about slow shipping, but at the time the website promised delivery by Christmas, so I placed my order. By Tuesday, December 20th, I was getting concerned because the slippers were not here and the website just said "processing". I called and got the same line everyone else has gotten. "We just received a shipment of these and they are being mailed tonight. We still GUARANTEE delivery by Christmas." Clearly Christmas has come and gone and no Stompeez. We called on the 27th and got the same exact line I got on the 20th, but still no Stompeez and the website still just says order processing. My problem is not with the slow shipping. My problem is with the outright deception. Don't promise something you can't deliver and quit lying and telling me the dadgum slippers have shipped when they haven't!!! And how am I supposed to cancel the order and disappoint my 5 year old who is carrying around the picture of the Stompeez and checking the mail every day anxiously waiting for her slippers. They should be ashamed of themselves for marketing to kids and then disappointing them on Christmas. We filed a complaint with the BBB and the Attorney General's office. The company did take the shipping charge off of our order, but really we just want the stinking slippers, or at least a straight answer about when they will get here.

Reply

18. *Jeri Buettner* says:
December 29, 2011 at 6:28 pm

Ordered 15 Stompeez pairs for my elderly mother on 11/06 for her grand and great grandchildren. Guess what …..still waiting. Called 4 times and got a different excuse every time. Guaranteed to receive before Christmas. My mother got home day before Christmas from nursing home to find still no presents for her small grandchildren!!

Reply

19. *Carrie* says:
December 29, 2011 at 5:55 pm

I have had the same experience. Still don't have my order that was guaranteed by Christmas! Now they are saying 4-5 weeks backordered. I am considering canceling my order but not sure I'll ever see my money. I've never had such an unprofessional experience.

Reply

# EXHIBIT B

# GENOVA, BURNS & GIANTOMASI | ATTORNEYS-AT-LAW

ANGELO J. GENOVA ◇ + *
JAMES M. BURNS ◇
FRANCIS J. GIANTOMASI ◇ +
JOHN C. PETRELLA ◇
JAMES J. McGOVERN III ◇
LAURENCE D. LAUFER +
JEFFREY R. RICH ◇ +
JUDSON M. STEIN ◇
KATHLEEN BARNETT EINHORN ◇ +
CELIA S. BOSCO ◇ +
BRIAN W. KRONICK ◇
JAMES BUCCI ◇ * +
PATRICK W. McGOVERN ◇ +
PETER R. YAREM ◇
WILLIAM F. HARRISON ◇
DOUGLAS E. SOLOMON ◇ +

RALPH J. SALERNO ◇
KEITH A. KRAUSS ◇ ^
MICHAEL J. OLIVEIRA ◇ +
HARRY G. KAPRALOS ◇ +
REBECCA MOLL FREED ◇ +
JENNIFER MAZAWEY ◇ +
JOHN R. VREELAND ◇ +
JENNIFER BOREK ◇ +
JOHN W. BARTLETT ◇ ^
JASON L. SOBEL ◇ +
DENA B. CALO ◇ *

COUNSEL

GEORGE L. SCHNEIDER ◇ +
GREGORY E. NAGY ◇
DAVID P. COOKE ◇ +
NICHOLAS R. AMATO ◇
HARVEY WEISSBARD ◇

OF COUNSEL

SHIRIN SAKS ◇ +
ANTHONY F. BELOTTA ◇
DINA M. MASTELLONE ◇ +
JOSEPH M. HANNON ◇ +
PETER F. BERK ◇
JORDANA S. ELROM ◇ +
JISHA V. DYMOND ◇ +
LISA A. JOHN ◇
LAUREN W. GERSHUNY ◇ +
NICHOLAS J. REPICI ◇ *
CAROLYN BUCCERONE ◇ * ^

MICHAEL L. MOORE ◇ +
ALEXANDER L. D'JAMOOS ◇ +
KRISTINA E. CHUBENKO ◇ +
RAJIV D. PARIKH ◇ +
GEMMA M. GIANTOMASI ◇ +
AKINYEMI T. AKIWOWO ◇ +
GINA M. SCHNEIDER ◇ +
HARRIS S. FREIER ◇ + ^ ∞
DAVID K. BRODERICK ◇ +
JODI C. LIPKA ◇ +
CYNTHIA L. M. HOLLAND ◇ +
ERIC W. RUDEN ◇ +

JOHN SUWATSON ◇ +
MATTHEW KERTZ ◇ + • ^
LAWRENCE BLUESTONE ◇ +
ROBERT W. FERGUSON, III ◇
LAUREN J. MARCUS ◇
JOSHUA E. KNAPP ◇ +
PHILLIP M. ROFSKY ◇
JUSTIN A. JACOBS ◇ +
REBECCA FINK ◇ +
FRANCIS M. GIANTOMASI ◇
ERICA B. LOWENTHAL ◇ +

RONALD H. DEMARIA
(1939-2004)

MEMBER OF NEW JERSEY BAR ◇
MEMBER OF NEW YORK BAR +
MEMBER OF PENNSYLVANIA BAR *
MEMBER OF DISTRICT OF COLUMBIA ^
MEMBER OF CONNECTICUT BAR ∞
MEMBER OF VIRGINIA BAR •

December 7, 2011

**VIA FACSIMILE AND REGULAR MAIL**
Honorable Margaret Mary McVeigh, P.J.Ch.
Superior Court of New Jersey, Chancery Division
Old Courthouse, Chambers 100
71 Hamilton Street
Paterson, New Jersey 07505

    Re:    **Idea Village Products Corp. v. Saevitzon, et al.**
           **Docket No.: PAS-C-      -11**

Dear Judge McVeigh:

    This firm represents defendants, Brett Saevitzon and Spot On Direct Response, LLC ("Spot On"), in the above referenced matter. At approximately 1:10 p.m. this afternoon, this firm received a copy of Plaintiff Idea Village Products Corp.'s ("Plaintiff") Order to Show Cause, Brief and Verified Complaint (totaling over 300 pages) via electronic mail from Michael G. Langan, Esq. We write to respectfully request an adjournment of the briefing schedule and return date for Plaintiff's application.

    First, although Plaintiff's communication purports to "serve" Mr. Saevitzon and Spot On, neither Mr. Saevitzon nor Spot On has authorized this firm to accept service on its behalf. Mr. Saevitzon resides outside of New Jersey and Spot On maintains no place of business within this State. As such, we respectfully request that the Court require Plaintiff to serve Mr. Saevitzon and Spot On (and the other defendants who also appear to reside out of state) as required by our Court Rules.

# GENOVA, BURNS & GIANTOMASI | ATTORNEYS-AT-LAW

Honorable Margaret Mary McVeigh, P.J.Ch.
December 7, 2011
Page 2

In addition, we respectfully request an adjournment because Mr. Saevitzon is scheduled to be out of the country on a pre-paid, pre-planned vacation with his family from December 11, 2011 through December 18, 2011, with limited or no access to a telephone or e-mail. Our ability to communicate with Mr. Saevitzon is necessary to prepare an appropriate response to Plaintiff's application. Further, and of less importance, our law firm has a pre-planned holiday event scheduled on December 16, 2011.

In light of the service and scheduling issues set forth above, and the fact that there is no request from Plaintiff for emergent relief requiring an accelerated briefing schedule and return date, we respectfully request that Your Honor provide a revised briefing schedule with a return date after January 10, 2012.

Thank you for Your Honor's consideration in this matter.

Respectfully Submitted,

GENOVA, BURNS & GIANTOMASI

KATHLEEN BARNETT EINHORN

KBE/RDP/cp
cc:   Michael G. Langan, Esq. (via electronic mail)
      Donald Beshada, Esq. (via electronic mail)

3067/001/467082-1

# EXHIBIT C





  

Stompeez are slippers with the personality and the fun that kids are looking for. They are comfy, colorful and can so some amazing tricks with just the step of your foot. Each Stompeez character will raise their head, their arms, or open their mouth when your child stomps around the house. Your child can bring these characters to life without really doing anything out of the ordinary, and their bright colors are sure to get the attention of any friends you child may invite over. What a truly fun and entertaining way to merely walk, stomp and jump around with.

‹ back to Products page

Visit website          Watch video

Related Products     Fantasma    Zing Toys

Other Brand Products    Tolo Toys    Baby's First    Ickee Stikeez

About us    Divisions & Brands    Products    Partners    Contact Us

**E-mail** 
Contact us for any feedback about products, issues of interest or to leave us any comment.

**News** 
Get the latest news about special offers and amazing products.

**Support** 
All about our customer support, customer feedback and technical information.

Facebook

Twitter

Youtube

INTERACTIVE GROUP

© InteractiveGroup 2011

# EXHIBIT D

IDEAVILLAGE PRODUCTS, CORP.

**Plaintiff**

vs.

BRETT SAEVITZON, ET ALS

**Defendant**

**Person to be served** (Name and Address):
INTERACTIVE GROUP, LLC., D/B/A PREXIO TOYS, LTD.
ATTN: ALLAN J. SUTTON 701 COOPER ROAD, SUITE 11
VOORHEES  NJ  08043
**By serving:** INTERACTIVE GROUP, LLC., D/B/A PREXIO TOYS, LTD.

**Attorney:** MICHAEL G. LANGAN, ESQ.

**Papers Served:** LETTER, ORDER TO SHOW CAUSE, LETTER TO THE
COURT, VERIFIED COMPLAINT, VERIFICATION & CERTIFICATION,
EXHIBITS A-L

Superior Court Of New Jersey

PASSAIC Venue

Docket Number: PAS C 117 11

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

**Service Data:**   [X] Served Successfully      [ ] Not Served

Date/Time: _12/16/2011  12:56PM_      _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing
therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Attempts:      Date/Time: _____
               Date/Time: _____
               Date/Time: _____

Name of Person Served and relationship/title:

JESSICA FALASCA

AUTHORIZED AGENT

**FILED**
STAMPED COPY WILL
ARRIVE SHORTLY

**Description of Person Accepting Service:**

SEX: _F_   AGE: _21-35_   HEIGHT: _5'4"-5'8"_   WEIGHT: _131-160 LBS._   SKIN: _WHITE_   HAIR: _BLACK_   OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] No response on:      Date/Time: _____
                         Date/Time: _____
                         Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

__19__ day of __Dec.__ , 20_11_

Notary Signature: _____

_____
Name of Notary          Commission Expiration

EDDIE ACOSTA, JR.
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires March 15, 2015

I, HANAN HAYON,
was at the time of service a competent adult, over
the age of 18 and not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

__12_/_16_/_2011_
Signature of Process Server        Date

Name of Private Server: HANAN HAYON Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) PROCESS

MM

# EXHIBIT E

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0400291183

Status Report For:      INTERACTIVE GROUP LIMITED LIABILITY COMPANY
Report Date:            11/14/2011
Confirmation Number:    1318030939

## IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION

Business ID Number:     0400291183
Business Type:          DOMESTIC LIMITED LIABILITY COMPANY
Status:                 ACTIVE
Original Filing Date:   06/09/2009
Stock Amount:           N/A
Home Jurisdiction:      NJ
Status Change Date:     NOT APPLICABLE

## REVOCATION/SUSPENSION INFORMATION

DOR Suspension Start    N/A
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:

## ANNUAL REPORT INFORMATION

Annual Report Month:    JUNE
Last Annual Report      08/25/2010
Filed:
Year:                   2010

## AGENT/SERVICE OF PROCESS (SOP) INFORMATION

Agent:                  ALAN J. SUTTON
Agent/SOP Address:      701 COOPER ROAD SUITE 11,VOORHEES,NJ,08043
Address Status:         DELIVERABLE
Main Business Address:  701 COOPER ROADSUITE 11,VOORHEES,NJ,08043
Principal Business      N/A
Address:

## ASSOCIATED NAMES

Associated Name:        N/A
Type:                   N/A

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0400291183

<u>PRINCIPALS</u>

Following are the most recently reported officers/directors (corporations),
managers/members/managing members (LLCs), general partners (LPs), trustees/officers
(non-profits).

| | |
|---|---|
| Title: | OTHER |
| Name: | ALAN J. SUTTON, |
| Address: | 701 COOPER ROAD ,VOORHEES,NJ 08043 |

<u>FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND
LIMITED LIABILITY PARTNERSHIPS</u>

To order copies of any of the filings below, return to the service page,
https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions
for obtaining copies. Please note that trade names are filed initially with the County
Clerk(s) and are not available through this service. Contact the Division for
instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

| | |
|---|---|
| Original Filing
(Certificate)Date: | 2009 |

Changes and Amendments to the Original Certificate:

| Filing Type | Year Filed |
|---|---|
| N/A | N/A |

Note:
Copies of some of the charter documents above, particularly those filed before August
1988 and recently filed documents (filed less than 20 work days from the current date),
may not be available for online download.

- For older filings, contact the Division for instructions on how to order.
- For recent filings, allow 20 work days from the estimated filing date, revisit the
  service center at https://www.njportal.com/DOR/businessrecords/Default.aspx

New Jersey Business Gateway
Business Entity Information and Records Service
Business Id : 0400291183

periodically, search for the business again and build a current list of its
filings. Repeat this procedure until the document shows on the list of documents
available for download.

The Division cannot provide information on filing requests that are in process. Only
officially filed documents are available for download.

# EXHIBIT F

| From: | Andrew R. Bronsnick [ABronsnick@massoodlaw.com] |
|---|---|
| Sent: | Friday, December 30, 2011 12:46 PM |
| To: | Donald Beshada |
| Cc: | Michael Langan; Kelly Zampino |
| Subject: | RE: IdeaVillage Products Corp. v. Brett Saevitzon, et al. |

Dear Mr. Beshada,

The Court assigned a docket number and made the Notice of Removal available within the last hour. I see you received same via PACER.

With regard to Interactive Group, LLC of NJ, it is my understanding that they were not engaged in any business activity for Stompeez.

I dispute the fact that the other parties were properly served. In addition, several of those parties, even if they were properly served, are nominal parties.

I also dispute your assertion with respect to the Lanham Act.

As such, I will not withdraw the Removal Petition.


**Andrew R. Bronsnick, Esq.**
**Massood & Bronsnick, LLP**
**50 Packanack Lake Road East**
**Wayne, N.J. 07470-6663**
**(973) 696-1900  Tel**
**(973) 696-4211  Fax**




**From:** Donald Beshada [mailto:dbeshada@gmail.com]
**Sent:** Thursday, December 29, 2011 6:20 PM
**To:** Andrew R. Bronsnick
**Cc:** Mike Langan; Kelly Zampino
**Subject:** IdeaVillage Products Corp. v. Brett Saevitzon, et al.

Mr. Bronsnick,

Thank you for forwarding the papers.  I did receive them from Mike Langan yesterday.

I note that your Notice of Filing of Notice of Removal states that the documents were electronically filed on December 28, 2011 (although, apparently, not electronically served by the system).  For some reason, though, they do not appear on the Pacer system.  Can you please forward your electronic confirmation (or a conformed copy of the papers), along with the case number and judicial assignment?

1

In reviewing the petition, I note that it states that only certain defendants have been served. That is not correct. Defendant Interactive Group, a New Jersey Limited Liability Company, was served via personal service on December 16, 2011 (see attached proof of service), and the remaining defendants were served in accordance with Judge McVeigh's Order. Since all of the defendants have not consented to Mr. Von Mohr's removal, the petition is defective and should be withdrawn.

I say that to you as I am not sure you were aware of those facts at the time you apparently filed the documents on December 28, 2011. However, now that you are so-aware, we ask that you kindly withdraw the defective petition immediately.

In addition to the facial defect, there are other, substantive issues with the petition. First, is your representation that there is complete diversity. As I am sure you know, and as noted above, defendant Interactive Group is a New Jersey Limited Liability Company, as per the attached registration with the State of New Jersey. Thus, since Idea Village is, too, a New Jersey entity, there is not "complete diversity" as you represented.

Second, the petition's claim about the Lanham Act is, likewise, incorrect. The operative Complaint does not plead a Lanham Act claim, and the contract claims contained in the Complaint do not, as a matter of law, operate to invoke the Lanham Act or federal jurisdiction. Please see, e.g., Silverstar Enterprises, Inc. v. Aday, 537 F.Supp. 236 (S.D.N.Y. 1982).

In sum, the Removal Petition does not comply with the operative procedural requirements or substantive law. As such, it is legally baseless, and, indeed, appears to have been filed for the sole basis of unnecessarily multiplying the proceedings in this case (and delaying the inevitable injunction hearing). Thus, we ask that you please withdraw the Removal Petition immediately so that the matter can properly proceed in the normal course in the Superior Court of New Jersey.

I look forward to your receipt of the electronic receipt of the filed documents, the case number, and an answer as to whether you will withdraw the petition.

Thank you.


Don Beshada

# EXHIBIT G

1989 WL 97407
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

STAFF BUILDERS OF PHILADELPHIA, INC., et al.

v.

Ephraim KOSCHITZKI, et al.

CIV. A. No. 88–6103. | Aug. 18, 1989.

**Attorneys and Law Firms**

William H. Roberts, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiffs.

Russell Piccoli, Russell Piccoli, Ltd., Otto K. Hilbert, II, pro hac vice, David W. Dow, Phoenix, Ariz., for plaintiffs.
Claire Rocco, Philadelphia, Pa., for defendant.
Barry J. Mandel, Terri L. Combs, Baer Marks & Upham, pro hac vice, New York City, for defendants.
Barry J. Mandel, New York City, for Ephraim Koschitzki, Stephen Savitsky, Staffbuilders Intl. & Tender Loving Care.

**Opinion**

**MEMORANDUM AND ORDER**

JAMES MCGIRR KELLY, District Judge.

*\*1* This dispute arises out of the relationship between a franchisee and franchisor in the temporary personnel services business. Plaintiffs are two corporations which allege that they are the duly licensed and registered holders of the exclusive right to utilize the trademark 'Staff Builders' in six counties in Pennsylvania and New Jersey which comprise the greater Philadelphia metropolitan area. Plaintiffs assert that defendants, including Staff Builders International, Inc. (International), the owner of the Staff Builders mark, have engaged in conduct which entitles the plaintiffs to relief on a number of grounds.

Plaintiffs have asserted the following claims for relief against defendants: (1) for cancellation of trademark registration and a permanent injunction; (2) for damages for infringement; (3) proxy fraud; (4) common law fraud; (5) breach of contract by failure to provide services; (6) breach of contract by competition in an exclusive area; (7)

unfair competition; and (8) for damages resulting from violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). Defendants have moved for the dismissal of five of the eight claims asserted in plaintiffs' complaint, or, in the alternative, for partial summary judgment against plaintiffs.1 Defendants have also moved for dismissal of all claims against the two individual defendants, Ephraim Koschitzki and Stephen Savitsky.

At oral argument on the motion, defendants contended that the motion to dismiss for failure to state a claim remained appropriate, but sought the court's consideration of the alternative motion for summary judgment. In response, plaintiffs contended that certain discovery remained outstanding, that plaintiffs had prepared to argue the matter as a motion to dismiss, and that the matter was not appropriate for disposition on motion for summary judgment at that time. I directed the parties to argue the motion in the alternative, and directed the plaintiffs to point out areas in which outstanding discovery prevented plaintiffs from fully responding to the summary judgment motion. I did not convert the motion to dismiss to a summary judgment motion at that time, and at the close of oral argument, I granted plaintiffs leave to respond within thirteen days to the supplemental memorandum previously filed by defendants, and took the matter under advisement.

I shall exclude from my consideration the matters outside the pleading presented to the court regarding the five counts of plaintiffs' complaint challenged by defendants, and therefore, decline to convert the defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. See Fed. R. Civ. P. 12(b).

**Motion to Dismiss the Trademark Claims**

Defendants contend that plaintiffs' first and second causes of action, in which plaintiffs seek cancellation of the 'Staff Builders' trademark, a permanent injunction against defendants' use of the trademark in the six counties plaintiffs allege to be their exclusive territories, and damages resulting from infringement, fail to state claims upon which relief can be granted. Plaintiffs allege in these two claims that they have been granted the exclusive right to utilize the trademark in certain areas by defendant International and its predecessor in interest. Plaintiffs assert that notwithstanding the grant of exclusive rights, the defendants have permitted subsidiaries of defendant Tender Loving Health Care Services, Inc. (TLC) to use the mark in areas in which plaintiffs and others have exclusive rights to utilize the mark. Plaintiffs claim that

this constitutes abuse and infringement of the mark, and 'has caused confusion in the minds of the public.' Complaint at ¶52.

**\*2** Plaintiffs seek cancellation of the mark from the Supplemental Register, and a permanent injunction against defendants, prohibiting their operation of any business under the Staff Builders name in the Philadelphia metropolitan area. Plaintiffs additionally allege that defendants' activities, constituting infringement, have caused business losses to the plaintiffs. Plaintiffs seek recovery of damages, and disclosure by defendants of any customer lists compiled by the infringing business.

Plaintiffs have not specified the provisions of federal law under which their first and second claims for relief arise. Defendants, however, have challenged the legal sufficiency of plaintiffs' claims under the Lanham Act, 15 U.S.C. § 1051 et seq. Defendants have focused on the fact that plaintiffs are merely licensees entitled to the exclusive use of the Staff Builders trademark within certain territories, while defendants retain the ownership rights to the registered trademark. Defendants contend that a licensee is not entitled to bring an action for infringement of a registered trademark against the registrant of the trademark.

The principal case relied on by defendants for this proposition is Silverstar Enter., Inc. v. Aday, 537 F. Supp. 236 (S.D.N.Y. 1982). In Silverstar, an exclusive licensee sought to enjoin the licensor and registrant of the trademark at issue from utilizing the mark and interfering with the licensee's rights and duties under the license agreement. The court held that any right the licensee had to sue under the Lanham Act for infringement was derivative of the rights of the registrant. Id. at 240–41 (construing 15 U.S.C. § 1114). The Silverstar court held that a claim by a licensee against its licensor regarding the right to use the licensor's registered mark was not an action to enforce the licensor/registrant's rights to the mark, but was instead an attempt to enforce the licensee's rights under the licensing agreement. Id. at 241. The court ruled that such an action was properly characterized as a contract dispute and did not constitute a trademark infringement claim. Id.

I find the reasoning of Silverstar persuasive, and accordingly hold that plaintiffs' claims for relief against defendants for infringement of the Staff Builders trademark are dismissed. Plaintiffs' first and second claims for relief fail to specify which provisions of federal trademark law, if any, entitle plaintiffs to relief. The clear focus of plaintiffs' allegations against defendants, however, is on purported infringement of the trademark by defendants. Nevertheless, plaintiffs aver that defendants' 'abuse and infringement of the mark has caused confusion in the minds of the public . . . as to who

is actually providing Staff Builders' services in these respective areas.' Complaint at ¶52.

To the extent that plaintiffs seek to assert a cause of action pursuant to 15 U.S.C. § 1125(a),2 plaintiffs' rights to relief under that section are not derivative of the rights of plaintiff's licensor, and the restriction which precludes plaintiffs' right to relief under an infringement action is inapplicable. See Chi Chi's, Inc. v. Chi-Mex., Inc., 568 F. Supp. 731, 734 (W.D. Pa. 1983). Plaintiffs, therefore, are not precluded by the grounds presently asserted in defendants' motion to dismiss from seeking leave to amend the complaint to allege such a cause of action, if they are able to allege facts which entitle them to such relief.

### Motion to Dismiss the Proxy Fraud, Common Law Fraud and RICO Claims

**\*3** Defendants have additionally moved for dismissal of plaintiffs' third, fourth and eighth claims for relief, for proxy fraud, common law fraud, and damages suffered as a result of RICO violations, respectively. Plaintiffs have responded by withdrawing their third claim for relief, the proxy fraud claim. Accordingly, plaintiffs' third claim for relief shall be dismissed. Defendants' motion to dismiss the common law fraud and RICO claims pursuant to Rule 12(b)(6) shall be denied.

### Motion to Dismiss for Lack of Personal Jurisdiction

Defendants additionally seek dismissal of plaintiffs' claims for relief against the individual defendants, Koschitzki and Savitsky, due to lack of personal jurisdiction. Plaintiffs have withdrawn their claim for relief for proxy fraud under the Securities Exchange Act of 1934. Therefore, 15 U.S.C. § 78aa does not apply, and its nationwide service of process provision cannot confer personal jurisdiction over the two individual defendants. Plaintiffs assert in the alternative that 18 U.S.C. § 1965(b) confers personal jurisdiction over the two individual defendants.

Section 1965(b) provides for service of process upon RICO parties residing in other districts in the United States than the judicial district in which the federal district court sits when 'it is shown that the ends of justice require' such service.3 To justify the imposition of nationwide service of process under this provision, the court must have personal jurisdiction over one of the alleged conspirators or participants in the RICO conspiracy or scheme, and the plaintiff must demonstrate

that there exists no other district in which a court will have personal jurisdiction over all the alleged co-participants or co-conspirators in the multidistrict conspiracy. Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 538–39 (9th Cir. 1986); Nordic Bank PLC v. Trend Group, Ltd., 619 F. Supp. 542, 564 (S.D.N.Y. 1985). But c.f. Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1055 & n.10 (S.D.N.Y. 1987) (Section 1965(d) authorizes nationwide service of process, such that due process requires only minimum contacts with United States; section 1965(b) 'ends of justice' limitation applies to court's assertion of venue over RICO defendants, not jurisdiction).

Plaintiffs concede the applicability of the Butcher's Union standard to this case, and in their initial memorandum of law in opposition to the motion to dismiss, further concede that 'appropriate allegations in these respects must properly be made in any amended complaint.' Plaintiffs' Memorandum at 49 n.15.

I conclude that plaintiffs have not properly alleged a basis for jurisdiction over defendants Koschitzki and Savitsky pursuant to section 1965(b). Plaintiffs have not shown that the ends of justice require the service of process pursuant to that provision, and, therefore, that provision cannot establish a basis for this court to assert personal jurisdiction over the individual defendants.

**\*4** Defendants contend that this court does not have personal jurisdiction over Koschitzki and Savitsky pursuant to the jurisdictional sutatute of the forum state, due to the absence of minimum contacts between the individual defendants and Pennsylvania. Plaintiff does not contend that Pennsylvania's jurisdictional provisions authorize the exercise of in personam jurisdiction over the

individual defendants.4 Accordingly, plaintiffs have not met their burden in opposition to a Rule 12(b)(2) motion regarding this basis for the court's assertion of personal jurisdiction.

I conclude that plaintiffs have not met their burden of demonstrating that this court has personal jurisdiction over defendants Koschitzki and Savitsky. Accordingly, defendants' motion to dismiss the plaintiffs' complaint as against Koschitzki and Savitsky will be granted.

An order follows.

## ORDER

AND, NOW, this 17th day of August, 1989, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Defendants' motion to dismiss plaintiffs' first second, third, fourth and eight claims for relief for failure to state a claim upon which relief can be granted is GRANTED as to plaintiffs' first, second and theird claims for relief, and DENIED as to plaintiffs' fourth and eighth claims for relief. Plaintiffs' first, second and third claims for relief are DISMISSED.

2. Defendants' motion to dismiss plaintiffs' claims for relief against defendants Ephraim Koschitzki and Stephen Savitsky is GRANTED. Plaintiffs' claims for relief against defendants Ephraim Koschitzki and Stephen Savitsky are DISMISSED.

Footnotes

1    Defendants filed the motion to dismiss or, in the alternative, for partial summary judgment against plaintiffs, on October 31, 1988. Defendants filed a memorandum in support of the motion the same day, and a supplemental affidavit in support on November 18, 1988. Plaintiffs filed a memorandum in opposition to the motion on December 1, 1988. Defendants then filed a reply memorandum on December 12, 1988. After the court ordered oral argument on the motion, defendants filed a supplemental memorandum in support of the motion on April 20, 1989. The parties have submitted evidentiary materials, in the form of deposition transcripts, affidavits and other materials, in addition to memoranda of law.

2    The currently effective version of section 1125(a) provides as follows:
     Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

3    Section 1965(b) provides
     In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Staff Builders of Philadelphia, Inc. v. Koschitzki, Not Reported in F.Supp. (1989)

4    Moreover, plaintiffs have not alleged specific contacts between the individual defendants and the forum which demonstrate that the individual defendants purposefully availed themselves of the privilege of acting within the forum. See Lord v. Sharbell Dev. Corp., No. 89–1523, slip op. at 3 (E.D. Pa. Aug. 4, 1989) (citing World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

**End of Document**

© 2012 Thomson Reuters. No claim to original U.S. Government Works.